## GARRETT et al. v. BROCK.

### No. 14114.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 4, 1940.

Rehearing Denied Nov. 8, 1940.

Gillen, Francis & Gallagher, of Dallas, for appellants.

T. R. Boone, Kearby Peery, and Charles C. McDugald, all of Wichita Falls, for appellee.

## DUNKLIN, Chief Justice.

This suit grew out of a collision between an automobile driven by A. B. Sandler and a truck in charge of one W. C. Barnes, as the agent and employee of E. N. Brock. The collision occurred on the highway about 3½ miles east of Iowa Park, about 9 o'clock in the evening on about April 12th, 1939. At the time of its happening, the truck and the automobile were both headed in an easterly direction toward Wichita Falls, with the truck in front and the automobile following it, and the front end of the automobile struck the rear end of the truck.

Mrs. Iona Lebus, who later married D. F. Garrett, was the owner of the automobile, and she was riding on the front seat with A. B. Sandler, the driver, when the accident happened. Mrs. Yetta Sandler, wife of A. B. Sandler, was also riding in the automobile, and was sitting on the front seat between her husband and Mrs. Lebus.

The suit was instituted by Mrs. Iona Lebus, but during its pendency she was married to D. F. Garrett, and thereafter it was prosecuted in the name of D. F. Garrett and his said wife, as plaintiffs.

Judgment was sought against the defendant, E. N. Brock, for $7,500 damages for alleged personal injuries sustained by Mrs. Garrett, as a result of the collision, plus $75 as expenses incurred for medical treatment for those injuries. Recovery was also sought for damages done to the automobile.

The case was tried to a jury in answer to special issues, and upon their verdict judgment was rendered in favor of the defendant, from which plaintiffs have prosecuted this appeal.

The jury found that on the occasion of the accident and prior to the collision, the driver of the truck brought the same to a stop, and when it stopped it occupied a part of the paved portion of the highway, and was in such position that it obstructed the right-hand side of the main portion of the traveled highway, while the left side of the highway nearly opposite the truck was occupied by another vehicle, and that the stopping of the truck in that position was negligence, which was a proximate cause of the injuries sustained by Mrs. Garrett.

The facts so found by the jury were all alleged in plaintiffs' petition. There were other allegations of negligence on the part of the defendant, namely, the failure of the truck driver to carry at the rear of said truck a lighted lamp, exhibiting one red light plainly visible 500 feet from the rear; and also failure to have a clearance light on the left side of the truck at the rear, displaying a red or yellow light visible for a distance of 500 feet from the rear; also failure to have a reflector at the rear of said truck, located as to height and maintained in such manner to be visible for at least 200 feet when opposed by the light of a motor vehicle displaying lawful undimmed headlights at night.

But the jury made adverse findings on those issues, and appellants have not assigned error to those findings.

The jury further found that $275 would reasonably compensate plaintiff, Mrs. Iona Garrett, for the injuries she sustained as

a result of the collision, and that $43 was the reasonable value of physician's services in treatment for those injuries.

There were further findings that the reasonable market value of plaintiffs' automobile immediately before the collision was $650, and its reasonable market value after the collision was $125; and further, that the reasonable market value of the car immediately after it was repaired was $400. In this connection, we will state that according to the undisputed evidence the plaintiffs had those repairs made and that the repair bill was paid by an insurance company who carried accident insurance on the automobile. There was a further finding that the collision in question was not an unavoidable accident. Other special issues, with the findings of the jury thereon, were as follows:

"23. Do you find from a preponderance of the evidence that the plaintiff and A. B. Sandler were on a joint enterprise just prior to and at the time of the collision in question? Answer: Yes.

"24. Do you find from a preponderance of the evidence that A. B. Sandler was driving plaintiff's automobile at the time and just prior to the time in question, in excess of 45 miles per hour? Answer: No."

"26. Do you find from a preponderance of the evidence that A. B. Sandler was driving plaintiff's automobile at the time and just prior to the collision in question, at an excessive rate of speed? Answer: Yes.

"27. Do you find from a preponderance of the evidence that such rate of speed at which A. B. Sandler was driving said car in question, as inquired about in Special Issue No. 26, was the proximate cause of the injuries to the plaintiff? Answer: Yes.

"28. Do you find from a preponderance of the evidence that A. B. Sandler at the time and just prior to the collision in question failed to keep a 'proper lookout' for traffic on the highway in question? Answer: Yes.

"29. Do you find from a preponderance of the evidence that such failure on the part of A. B. Sandler to keep a proper lookout, if you have so found he did fail, was a proximate cause of the damage to plaintiff, if any? Answer: Yes."

"38. Do you find from a preponderance of the evidence that A. B. Sandler failed to use 'ordinary care' toward having plaintiff's car under control just prior to the time of the collision in question? Answer: He failed to use ordinary care.

"39. Do you find from a preponderance of the evidence that such failure on the part of A. B. Sandler to have plaintiff's car under control at the time in question, as inquired about in the preceding issue, was a proximate cause of plaintiff's damage, if any? Answer: Yes."

"43. Do you find from a preponderance of the evidence that A. B. Sandler discovered the position of the truck prior to the time of the collision in question? Answer: Yes."

"49. Do you find from a preponderance of the evidence that A. B. Sandler, in approaching the place where the collision occurred, failed to use ordinary care in reducing the speed of his car before driving the same past the warning signs, and car, on the highway, belonging to Mr. Beverly? Answer: Yes.

"50. Do you find from a preponderance of the evidence that such failure inquired about in the preceding issue on the part of A. B. Sandler was a proximate cause of the damages of the plaintiff, if any? Answer: It was a proximate cause."

The issue of joint enterprise, submitted in Special Issue No. 23, was specially pleaded by the defendant, and the negligence of Sandler, found by the jury in issues above shown, was pleaded as contributory negligence chargeable to Mrs. Garrett, by reason of such joint enterprise. Other allegations of contributory negligence of Sandler were not sustained by the jury, and therefore are not necessary to be mentioned here.

Special Issue No. 42 and the jury's answer thereto are as follows: "Do you find from a preponderance of the evidence that the acts and conduct of A. B. Sandler in driving the plaintiff's automobile prior to and at the time of the collision was not the sole proximate cause of the collision? Answer: It was not the sole cause."

According to further findings of the jury, Mrs. Garrett discovered the position of the truck prior to the time of the collision but that such discovery was not in sufficient time to enable her to avoid the collision by the exercise of ordinary care and the use of all the means at her command.

After the verdict was returned, the plaintiffs filed their motion for the court to disregard the findings of the jury in

answer to Special Issue No. 23 of joint enterprise, because not supported by any competent evidence; and as a corollary thereto to set aside the further findings of contributory negligence of A. B. Sandler, the driver of the automobile, because the same was not imputable to plaintiffs in the absence of a sufficient finding of joint enterprise. Plaintiffs further prayed for judgment in their favor for damages occasioned by defendant's negligence as found by the jury.

That motion was based on Vernon's Texas Civil Statutes, Art. 2211, as amended by the Acts of the 42nd Legislature in 1931.

Much testimony bearing on the issue of joint enterprise is cited in appellants' briefs, which we shall not undertake to set out in full here. The following is the substance of the facts established by the undisputed testimony of Mrs. Garrett and Mr. Sandler and his wife. Mr. and Mrs. Sandler planned a trip from Electra to Wichita Falls to attend a church social at the Holt Hotel, given by the Women's Auxiliary of the Jewish Synagogue, and invited Mrs. Lebus to accompany them in their car and the invitation was accepted. When they were ready to start on the trip, Mr. Sandler discovered that his car was not in proper running condition. Mrs. Lebus then proposed that her car be used instead of the Sandler car, and delivered to him the keys of her car, with the understanding he was to drive it. Sandler proceeded to do the driving. Mrs. Lebus and Sandler occupied the front seat of the car, and Mrs. Sandler sat between them on that seat.

Mrs. Lebus testified in part as follows:

"A. If he (Sandler) had been driving careless or reckless why I would have stopped him.

"*    *    *    *    *

"Q. Why would you have stopped him? It was your car? A. Because I don't believe in driving 75 or 80 miles an hour at night or driving careless or reckless.

"Q. * * * In other words, you knew that was your car and you had control over it? A. And what?

"Q. And you had control over it. A. Well, whether it was my car or whether I had control over it or not if I was driving with some one else in their car and they were going 75 or 80 why I would ask them not to drive so fast.

"Q. But you knew that you wasn't going to permit him to go 75 or 80 miles an hour with your car that night? A. I wouldn't have permitted it with anyone else if I could have kept them from it even in their car.

"*    *    *    *    *

"Q. You knew that was your car and you could control it with reference to him driving reckless and careless and 75 or 80 miles an hour, didn't you? A. Yes, I think a passenger has a right to control any driver that is driving too fast.

"Q. And if he had started driving 75 or 80 you would have stopped him, wouldn't you? A. I would have asked him to have gone slower.

"Q. Well, wouldn't you have stopped him? A. I don't know how I could have stopped him. I would have asked him to drive slower.

"Q. Then he was driving under your directions as far as speed was concerned. A. Why, no.

"Q. Well, with your consent, going as fast as he was. A. He was driving my car.

"Q. Yes. And had your consent to go the speed he had gone? A. I didn't say anything to him about the speed he was going.

"Q. The speed he was going was satisfactory to you? A. Yes, it was."

We believe the decision of the Supreme Court in El Paso Electric Co. v. Leeper, Tex.Com.App., 60 S.W.2d 187, 189, is controlling on the question now under discussion. In that case it was held that the testimony introduced showed conclusively, as a matter of law, that the trip there involved was a joint undertaking by the driver of an automobile and Miss Leeper, whose mother, in her behalf, furnished the car for the trip, and Miss Leeper was riding with the driver when an accident happened, occasioned by the concurring negligence of the Electric Company and the driver of the car, as the result of which Miss Leeper sustained personal injuries, for which recovery of damages was sought. It was held that by reason of the joint undertaking the contributory negligence of the driver was imputable to Miss Leeper, which barred her recovery against the Electric Company, notwithstanding its negligence. The testimony in this case pertinent to the issue of joint undertaking is substantially to the same effect as that

in the Leeper case, in which the Supreme Court approved these rules touching the question of joint enterprise:

"Where persons are engaged in a common or joint enterprise and each has an equal right to direct and control the conduct of the others with respect to acts or omissions which contributed to cause an injury to one of them, the negligence of one of such persons is imputed to each of the others. 45 C.J. p. 1020, par. 574.

"As applied to occupants of a conveyance, the doctrine of joint enterprise not only requires joint possession thereof by the joint adventurers, but they must also have joint control and responsibility for its operation. Simensky v. Zwyer, 40 Ohio App. 275, 178 N.E. 422. This rule is in harmony with the definition given by the trial court in the instant case. In this regard the trial court charged the jury as follows: 'Occupants of a conveyance are supposed to be on a joint expedition where they have not only a joint interest in the object and purpose of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance.'"

Accordingly, the assignment of error now under discussion is overruled, without a discussion of decisions of other states cited by appellants, to support a different conclusion.

One Earl Davis was introduced as a witness for the defendant and testified that at the time of the accident he was engaged in repairing a fence about 900 feet from the place of the accident, using a light, and from which he saw the collision; that defendant's truck had not stopped until it was struck by the automobile; that just prior to the accident the automobile was being driven 50 or 60 miles per hour, and he did not notice that it slowed down; there were three lights on the rear end of defendant's truck and all were burning when he got to the truck after the collision; he did not notice any reflector on the truck. But further testimony given by him tended to discredit some of the foregoing, especially when considered in connection with his statement to the effect that owing to the long time that had elapsed since the accident his memory of the incidents connected therewith was not quite clear.

Error has been assigned to statements made in argument to the jury by counsel for defendant, as follows:

"Old Earl Davis, I have known him many years and you may believe because he is acquainted with me, he didn't tell the truth; but, if you had known Earl Davis as I know him and his daddy as I knew him, you wouldn't have that feeling about him."

"How fast, Earl? 50 or 60 miles an hour, and it didn't slow up until it hit that truck? I don't know, this jury may go out and say Earl Davis lied, but I have known him and I have known him years and knew his daddy before him, and I have a great deal of respect for Earl Davis."

"You know, milk of human kindness runs in the veins of some people, and within 15 Or 20 years the people know about it. Earl went down there to help."

No objection was urged by counsel for plaintiff to that argument when it was made, but same was urged in plaintiffs' motion for new trial as a ground for setting aside the judgment rendered in defendant's favor on the verdict returned.

The trial court approved the bills of exception to that argument with this qualification:

"The court is of the opinion that the argument of T. R. Boone was in reply to the argument of Mr. Gillen, and the court allows this bill, with the foregoing qualifications."

In the first place, the findings of the jury definitely show that the jury discredited Davis' testimony that the truck did not stop before the collision occurred; and that just prior to the collision the automobile was traveling 50 or 60 miles per hour. And by reason of the uncertainty of his further testimony as to lights on the truck, it is not reasonably probable that much credence was given thereto. The argument of counsel for defendant to the jury was not of such prejudicial and inflammatory character that probable injury to plaintiffs by reason thereof could not have been avoided by an instruction to the jury if plaintiffs had objected thereto at the time they were made. Failure to make objection thereto, especially when the remarks complained of were made at different times, as shown by bills of exceptions, was a waiver of right to complain of them for the first time in plaintiffs' motion for new

trial. Texas Cities Gas Co. v. Ellis, Tex. Civ.App., 63 S.W.2d 717; City of San Antonio v. McKenzie Construction Co., Tex. Civ.App., 138 S.W.2d 568; Ramirez v. Acker, Tex.Civ.App., 124 S.W.2d 905; Id., 134 Tex. 647, 138 S.W.2d 1054; Missouri, K. & T. Ry. Co. v. Nesbit, 43 Tex.Civ.App. 630, 97 S.W. 825, writ refused; Black v. Wilson, Tex.Civ.App., 187 S.W. 493, writ dismissed; Harris v. Sadler, Tex.Civ.App., 55 S.W.2d 173, writ dismissed; City of Waco v. Rook, Tex.Civ.App., 55 S.W.2d 649, writ dismissed.

■ Moreover, it was within the discretion of the trial court to overrule the objection to the argument if the same was provoked as a rejoinder to argument already made by plaintiffs' counsel. And in the absence of a clear showing of abuse of such discretion, no error is shown. Brazelton v. St. Louis S. W. Ry. Co., Tex. Com.App., 296 S.W. 290; Emberlin v. Wichita Falls Ry. & Ft. W. Ry. Co., Tex. Com.App., 284 S.W. 539.

■ When the bills of exception were accepted and filed by appellants, they were bound by the qualification thereof by the trial court. Vernon's Tex.Civ.St. Art. 2237; Lowrimore v. Sanders, 129 Tex. 563, 103 S.W.2d 739, 106 S.W.2d 266; Petroleum Casualty Co. v. Bristow, Tex.Civ.App., 35 S.W.2d 246; 3 Tex.Jur. 657.

Accordingly, the assignment now under discussion is overruled.

Since the judgment in favor of defendant on the whole case must be affirmed, on the findings of the jury of joint enterprise, and the contributory negligence of Sandler, above shown, it is not necessary to determine the merits of another assignment to the admission of testimony offered by defendant, that the insurance company, with whom plaintiffs had procured an insurance policy, had paid $410 for repairs on the automobile after the collision; over plaintiffs' objection that the transaction was with a stranger to the suit, and such testimony would be prejudicial to plaintiffs' right to recover the damages which they sought to recover.

For the reasons stated, the judgment of the trial court is affirmed in its entirety.

## On Motion for Rehearing.

■ As pointed out in our original opinion, the trial judge approved the several bills of exception to statements of appellee's counsel in his argument to the jury, with the qualification that the argument so made was in reply to argument theretofore made by plaintiffs' counsel. Appellants contend that the qualification was without proper foundation in fact, as reflected by the bills themselves. Those bills of exception set out the certain prior argument of plaintiffs' counsel, to which it is insisted the qualification was necessarily confined. That argument of plaintiffs' counsel was to the effect that the testimony of Earl Davis, witness for the defendant, that the truck was still moving when the collision occurred, was untrue, as reflected by other testimony of that witness of certain circumstances detailed. It is insisted that, as that argument was confined to Davis' own testimony, the argument of defendant's counsel outside the record could not be excused on the ground that it was merely a rejoinder to the argument of plaintiffs' counsel. As noted in our original opinion, no possible harm resulted to plaintiffs by the remarks of defendant's counsel shown in those bills of exception, since the finding of the jury that the truck had stopped before the collision showed conclusively a rejection of Davis' testimony that it was still moving when the collision occurred, as well as his further testimony pointed out in original opinion as to the speed of plaintiffs' car before the collision.

■ There was a further qualification of those bills of exception, to the effect that plaintiffs offered no objection to the argument of counsel at the time the argument was made, which counsel for plaintiffs admits was true. It follows, therefore, that the improper argument complained of worked no injury to appellants and therefore was insufficient to require a reversal of the judgment. 3 Tex.Jur. par. 877; page 1253, par. 883, page 1260.

In the motion for rehearing, the seventh assignment of error urged on original hearing is again presented. In that assignment complaint was made of the admission in evidence offered by defendant, in substance that the bill for repairs of the automobile in question was paid by the General Insurance Company, that carried accident insurance on the car, and that, too, in the absence of any admissible proof of the customary stipulation in the policy that the insurer would be subrogated to the rights of the insured to any right of action the latter may have against the

414

wrongdoer whose tort was the proximate cause of the damage.

Following is one of the objections urged to the admission of that evidence, and repeated several times: "This relates to a transaction between the plaintiff and another party that has nothing to do with the defendant and it absolutely has no connection with this lawsuit, and it is irrelevant, and it is prejudicial to the plaintiff in this case because she does have a right to recover for this damage to her automobile, and any compensation that may be paid to her by a third party under a contract with that party has nothing to do with her right to recover, and such testimony as to such a transaction is of a prejudicial nature and should not go before this jury."

In plaintiffs' petition it was alleged that immediately before the collision the reasonable market value of the car was $750; immediately after the collision it was $100; that it was repaired at the reasonable expense of $410, and its reasonable market value after those repairs was $375; and that the car was damaged in the sum of $650.

The jury found that immediately before the collision the reasonable market value of the car was $650; its reasonable market value immediately after the collision was $125; and its reasonable market value immediately after it was repaired was $400.

The proof showed that the repair bill was for $410, which was paid by the Insurance Company, less "the deductible" of $50, making the amount paid $360.

■ That evidence was relevant to the issue of the amount of damages recoverable for injury to the car. It was wholly irrelevant to the issues of joint enterprise and contributory negligence of A. B. Sandler, the driver of the car, both of which were determined by the jury in defendant's favor.

■ But assuming error in its admission, as insisted by appellants, yet the error was harmless because the findings of the jury of joint enterprise and contributory negligence were sufficient to defeat plaintiffs' suit, even if the court had excluded the proof of payment of repairs by the Insurance Company.

There is nothing in the record to suggest possible bias in favor of defendant against the plaintiff, a woman, and the minor child. If left to conjecture, possible bias in her favor might more reasonably be surmised. Since, as urged by plaintiffs in objections to that testimony, the payment of the repair bill by the Insurance Company had no possible bearing on the issues of joint enterprise and contributory negligence of the driver of plaintiffs' car, it would be unreasonable to suppose that a jury composed of twelve fair-minded men of average intelligence probably might have been influenced thereby to plaintiffs' injury.

We cannot say that the error in admitting the testimony last referred to "amounted to such a denial of the rights of appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case", within provisions of Court Rule 62–a. 3 Tex.Jur. par. 874, page 1249, and par. 875, page 1250, par. 880, page 1267.

In addition to the foregoing authorities, a multitude of decisions is noted in 1 Tex. Jur. Supplement, beginning on page 352, upon the subject of "harmless error" in trials of cases, showing different holdings under different conditions of the records. We shall cite only a few of those decisions, which we believe support our foregoing conclusion on the question now under discussion, and also on the issue of improper argument. Nance v. McClellan, 126 Tex. 580, 89 S.W.2d 774 (Sub. 7 of Syl.), 106 A.L.R. 117; San Antonio U. & G. Ry. Co. v. Schmidt, Tex.Civ.App., 18 S.W.2d 237 (Sub. 9 of Syl.) error dismissed; Bankers' Reserve Life Co. v. Springer, Tex. Civ.App., 81 S.W.2d 756 error refused; Epting v. Nees, Tex.Civ.App., 25 S.W.2d 717 (Sub. 7 of Syl.) error refused; McFarlin v. Elliott-Tuck, Inc., Tex.Civ.App., 71 S.W.2d 410 (Sub. 3 of Syl.).

Hence we conclude that assignment of error No. 7 is without merit.

The motion for rehearing is overruled.